The opinion of the Court was delivered by
Dunkin, C. J.
In the view which the Court takes of this case, it is not necessary to consider or determine some of the important principles so ably discussed in the decree of the Chancellor.
The parties occupied the relation of father-in-law and son-in-law. The matter in difference between them was solely the right of property in twenty-nine bales of cotton, at that time in possession of the defendant. Nor about the facts, can it be said, there was any dispute whatever. They were few and simple, and all reduced to writing. The only subject of disagreement was the consequence resulting from admitted facts. The Courts were open to them, and they had legal advisers at their elbow. But closely connected as they were, they did ■ not choose to appeal to the public tribunals of the country. They preferred rather to incur the hazard of “ suffering wrong than to go to law.”
*22 Accordingly, on 4th January, 1866, under their hands and seals, and in the presence of a subscribing witness, they entered into a written agreement to "refer all matters in dispute in relation to certain paper writings (describing them) to the arbitrament and award of four arbitrators, two to be chosen by each party, and an umpire selected by us jointly, the said papers about cotton signed by W. F. De Schamps,” (the defendant.) The arbitrators and the umpire were thereupon selected, and, on the same day, made their award under their hands and seals, as follows: “ We, the undersigned, arbitrators and umpire in this case, on consideration of the matters referred to us, do award that William F. De Schamps do keep the cotton in dispute between himself and Benjamin Mitchell.”
The principal ground alleged by the plaintiff for impeaching the award was, that the arbitrators, intending to decide according to law, had plainly and palpably mistaken the law. This allegation depended on the testimony of one of the arbitrators. The consideration for the cotton was the. sale and delivery of certain slaves by the plaintiff to the defendant, in December, 1864, and February, 1865. The witness testified that "'the award or decision of the arbitrators was made for the reasons, or upon the consideration, that in consequence of the previous proclamation of the President of the United States, the negroes referred to were free; that therefore the seller had no title to convey — the consideration of the contract or agreement thus failing.” The inquiry is, whether, assuming that the arbitrators had misapprehended the law, this be a sufficient ground for setting aside their award. Upon this subject Mr. Justice Story says: The difficulty is two-fold; “ whether the mistake of fact or of law is to be made out by extrinsic evidence ; and whether a mistake of law, upon a general submission, involving the decision both of law and of fact, constitutes a valid objection.” 2 Story Eq. J. § 1453. *23 "Arbitrators,” says be, "being tbe chosen judges of the parties, are, in general, to be deemed judges of the law, as well as of the facts, applicable to the case upon them. If no reservation is made in the submission, the parties are presumed to agree that every question, both as to law and fact, necessary for the decision, is to be included in the arbitration. Under a general submission, therefore, the arbitrators have rightfully a power to decide on the law and the fact. And, under such a submission, they are not bound to award on mere dry principles of law; but may make their award according to the principles of equity and good conscience.” § 1454. And in a note is cited the authority of Lord Thurlow, in Knox vs. Symonds, (1 Ves. J. 369,) who says: "Upon a general reference to arbitration of all matters in dispute between the parties, the arbitrator has a greater latitude than the Court, in order to do complete justice between the parties; for instance, he may relieve against a right which bears hard upon one party, but which, having been acquired legally, and without fraud, could not be resisted in a Court of justice.” It is finally said by Judge Story : “ But- the decision of the arbitrators upon a doubtful point of law, or in a case where the question of law itself is designedly left to their j udgment and decision, will generally be held conclusive.”
There was no doubt about the sale and delivery of the slaves. The legal consequence'of extraneous events was the only matter of disagreement. This they referred to judges of their own choice, instead of the judges appointed by law, and they have decided in favor of the defendant. Ve see nothing in the testimony of the witness which would justify the Court in impeaching that judgment. As between these parties, the award of the arbitrators is the law of the case, and must be regarded as final and conclusive.
In the adjustment of the transaction between the parties *24 in January, 1865, the plaintiff, in addition to the price of the slaves, had paid the defendant in cash, or in the then currency of the country, Confederate money, four hundred and twenty-six dollars and fifty cents. This, as the witnesses say, was inadvertently overlooked by the arbitrators in rendering their award.
It is ordered and decreed, that the decree of the Chancellor, setting aside the award, be reversed. It is further ordered that it be referred to the Commissioner, to ascertain and report to the Circuit Court, the value of the four hundred and twenty-six dollars and fifty cents on the 4th January, 1865. It is finally ordered, that the decree of the Chancellor, on the subject of the costs, be affirmed.
Wabdlaw and Inglis, J. J., concurred.

Deoree modified.